# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| TRUSTEES OF THE IRON WORKERS' LOCAL NO. 25 PENSION FUND; IRON WORKERS' HEALTH FUND OF EASTERN MICHIGAN; IRON WORKERS LOCAL NO. 25 VACATION PAY FUND; and IRON WORKERS' APPRENTICE FUND OF EASTERN MICHIGAN, Trust Funds Established and Administered Pursuant to Federal Law, | Paul D. Borman<br>United States District Judge<br><br>Case Number: 2:10-cv-12502-PDB-MKM |

      Plaintiff,

v.

MUNICIPAL & INDUSTRIAL STORAGE, INC., a Michigan Corporation, and AL LETTINGA, Individually,

      Defendants,

and

CHEMICAL BANK, A Michigan Banking Corporation,

      Intervenor
      Defendants.
_____/

## ORDER AND OPINION GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

   This action comes before the Court on Plaintiffs' motion for summary judgment. (Dkt. No.17.) Defendants have filed a response (Dkt. No. 25.), and Plaintiffs have filed a reply. (Dkt. No. 27.) Oral arguments were heard on February 9, 2011 at 2:00 p.m. For the following reasons, the Court GRANTS Plaintiffs' motion for summary judgment.

   **I.**  **Background**

Trustees of the Iron Workers' Local No. 25 pension Fund; Iron Workers' Health Fund of Eastern Michigan; Iron Workers' Local No. 25 Vacation Pay Fund; and Iron Workers' Apprentice Fund of Eastern Michigan (the "Funds" or "Plans," collectively "Plaintiffs") brought this action against Municipal & Industrial Storage, Inc. ("Municipal") and its owner, Al Lettinga ("Lettinga," collectively "Defendants"), pursuant to 29 U.S.C. §§ 1109, 1132(g)(2), 1145, and other provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"). 29 U.S.C. § 1001, *et seq*. Plaintiffs allege that Defendants failed to pay fringe benefit contributions on behalf of individuals doing work covered by a collective bargaining agreement ("CBA") between Municipal and the Iron Workers' Local No. 25 Union (the "Union"). Plaintiffs' have also moved for partial summary judgment against Municipal (Dkt. No. 14.) That motion is addressed in a separate order.

This motion for summary judgment involves Plaintiffs' additional claim that Lettinga is personally liable for Municipal's unpaid contributions of $94,959.02,[1] as well as statutory interest, costs, and fees. (Pls.' Br. in Supp. of Mot. Summ. J. 1; Ex. A, Reitzel Aff. ¶ 2.) Plaintiffs contend Lettinga is liable because he breached his fiduciary duty under ERISA when he decided to use Municipal revenues to pay operating expenses instead of fringe benefit contributions. (Pls.' Br. 10.)

To this end, Plaintiffs direct the Court's attention to an earlier dispute between these parties. In 2009, plaintiffs sued Defendants for unpaid fringe benefit contributions. (*Id.* at 1.) In that matter, Case No. 09-10706, Judge O'Meara held that Lettinga was a fiduciary with respect to the unpaid contributions and held him personally liable for the delinquent benefit contributions. (*Id.*; Ex. B, Order Granting Summ. J.) Additionally, Plaintiffs point out that Lettinga has admitted that he is the

---

[1] In their most recent filing, Plaintiffs claim this figure has risen to over $120,000. (Pls.' Reply 1.)

2

majority owner of Municipal, runs the day-to-day operations of the company, is in charge of determining which bills to pay, including whether or not to make contributions, and that Municipal has continued paying other operating expenses to the exclusion of past-due fringe benefit contributions. (*Id.* at 2-4; Ex. C, Lettinga Dep. 9:9-39:20, July 9, 2010.)

Defendants do not dispute that Municipal is liable for delinquent contributions. (Defs.' Resp. 2.) However, they do not agree that Lettinga breached whatever fiduciary duty he may owe to the Funds. (*Id.* at 13.) Defendants admit that "whatever revenue is received by Municipal is allocated by Mr. Lettinga in the best interest of paying whatever amounts are due to several parties," but that he has not breached his fiduciary duty because he has endured personal sacrifice and made difficult decisions in order to make sure the iron workers he uses stay employed and Municipal does not go out of business. (*Id.* at 12-13.) Defendants assert that the situation has changed since Judge O'Meara's ruling in 2009 (*id.* at 10); Lettinga has gone long periods of time without receiving a salary from Municipal and has not paid rent for months. (*Id.*)

Defendants argue, additionally, that the only reason they are behind on their payments is because Plaintiffs have interfered with their current revenue-producing projects. (*Id.* at 10-11.) Plaintiffs allegedly have been communicating with general contractors that work with Municipal, and as a result, those contractors are now refusing to pay Municipal. (*Id.* at 11.) Defendants also contend that summary judgment on this issue is inappropriate because another one of its creditors, Chemical Bank (the "Bank"), also has a security interest in Municipal's receivables and claims to have priority over Plaintiffs. (*Id.*) As it did in response to Plaintiffs earlier motion for partial summary judgment, Defendants argue that "[t]o whom the Defendant is responsible to make payment to first and who has a priority in its revenues is a material fact that could alter the way this

3

matter is resolved." (*Id.* at 12.)

## II.     Standard of Review

Summary judgment is only appropriate if there are no genuine issues of material facts and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *see also Henderson v. Walled Lake Consol. Schs.*, 469 F.3d 479, 487 (6th Cir. 2006). When applying this standard, courts must view all materials, including all of the pleadings, in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party bears the responsibility of establishing no issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its burden, the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial. *Id.* at 324. The non-moving party must do more than show that there is some abstract doubt as to the material facts. It must present significant probative evidence the issue exists in order to defeat a motion for summary judgment. *See Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993).

## III.    Discussion

The threshold question in any dispute alleging a breach of fiduciary duty is whether the defendant was acting as a fiduciary when he committed the challenged actions. *See Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). In this case, Plaintiffs claim Lettinga breached his fiduciary duty when he decided not to make the fringe benefit contributions required under the CBA and used

4

that money to pay for other operating expenses. The Court must therefore determine whether Lettinga was acting as an ERISA fiduciary, and, if so, whether that decision constituted a breach of his fiduciary duty.

### A. Lettinga Was a Fiduciary Under ERISA

Under ERISA, a person is a plan's fiduciary "to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). Accordingly, to decide whether Lettinga was acting as an ERISA fiduciary, the Court must determine whether (1) unpaid benefits are plan assets; and (2) he exercised discretionary control or authority over such assets. *Operating Eng'rs' Local 324 Pension Fund v. Midstates Contractors, LLC*, No. 04-73052, 2007 WL 496706, at *3 (E.D. Mich. Feb. 13, 2007); *Iron Workers' Local No. 25 Pension Fund v. McGuire Steel Erection, Inc.*, 352 F. Supp. 2d 794, 804 (E.D. Mich. 2004).

### 1. Unpaid Contributions Are Plan Assets

The Sixth Circuit has not yet considered when unpaid fringe benefit contributions become plan assets. *Midstates Contractors*, 2007 WL 496706, at *4. However, as this Court noted in *Midstates Contractors*:

> Courts in the Third Circuit hold that benefit contributions become plan assets at the moment they are due, so long as the parties have agreed that contributions become plan assets when due. Other courts, however, hold that unpaid benefit contributions become plan assets when the contributions become due, regardless of the language of the benefit plan.

*Id.* (quoting *McGuire Steel*, 352 F. Supp. 2d at 804) (citations omitted)). Multiple cases in this

district have held that contributions are plan assets as soon as they become due. *See, e.g.*, *Plumbers Local 98 Defined Ben. Pension Fund v. M & P Master Plumbers of Mich., Inc.*, 608 F. Supp. 2d 873, 877 (E.D. Mich. 2009) (collecting cases). This comports with the Department of Labor's interpretation which states that for purposes of ERISA, the assets of the plan include unpaid contributions that an employer is required to pay. *See Iron Workers' Local 25 Pension Fund v. Sova Steel, Inc.*, No. 08-13074, 2009 WL 3872149, at *5 (E.D. Mich. Nov. 18, 2009) (quoting 29 C.F.R. § 2510.3-102(a)).

Under either approach, the unpaid contributions Municipal owes became plan assets when they became due. Article XV of the CBA states, "[c]ontributions become vested plan assets at the time they become due and owing to the Fund." (Pls.' Mot. for Partial Summ. J., Dkt. No. 14, Ex. B at 15.) It also provides that "[t]itle to all contributions paid into and/or due and owing the Fund will be vested in and remain exclusively in the Trustees of the Fund." (*Id.*) Accordingly, the Court holds that the unpaid fringe benefit contributions Municipal failed to make became Plan assets when they became owing and due to Plaintiffs.

### 2. Lettinga Exercised Discretion Over Such Assets

Even if the Court did not simply accept Judge O'Meara's earlier ruling that Lettinga is an ERISA fiduciary, it is clear that Lettinga exercised control over Municipal, and therefore had discretion over the unpaid contributions. Lettinga is the primary shareholder of Municipal and owns 75% of its stock. (Pls.' Mot. Ex. C., Lettinga Dep. 9:9.) He admitted that he runs the day-to-day operations of the company. (*Id.* at 9:15-17.) Accordingly, he decides what bills to pay, including whether or not to make the fringe benefit contributions required under the CBA. (*Id.* at 39:9-20.) Defendants admit Lettinga exercises discretion even more explicitly in their response, stating

"whatever revenue is received by Municipal is allocated by Mr. Lettinga in the best interests of paying whatever amounts are due to several parties." (Defs.' Resp. 12.)

Courts routinely hold that this type of control demonstrates that the officer defendant is an ERISA fiduciary and can be held personally liable. *See, e.g.*, *Plumbers Local*, 608 F. Supp. 2d at 880 ("[Pankin] also admitted that he had the final say in all decisions regarding M&P, including whether fringe benefit contributions were to be paid."); *McGuire Steel*, 352 F. Supp. 2d at 806 ("[G]iven Defendant McGuire's admission that he was responsible for the day-to-day operation of Defndant McGuire Steel, including the decision of whether or not to pay ERISA benefit contributions, no reasonable jury could find that he did not act in a fiduciary capacity."). Because it is clear that Lettinga exercises discretion over Plan assets, the Court holds that he is a fiduciary under ERISA.

        **B.**     **Lettinga Breached His Fiduciary Duty By Using Unpaid Contributions to Pay for Other Operating Expenses**

An ERISA fiduciary must "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1). A fiduciary violates this duty if it uses plan assets to satisfy other business obligations. *McGuire Steel*, 352 F. Supp. 2d at 806. Financing company operational expenses with plan assets (unpaid contributions) is a misappropriation of those assets and constitutes a breach of the fiduciary's duties. *Id.* at 805-6. In fact, some courts treat delinquent fringe benefit payments as "de facto mismanagement of plan assets." *See, e.g.*, *Plumbers Local*, 608 F. Supp. 2d at 877. Under section 1109, "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be *personally liable* to make good to such plan any losses to the plan resulting from each such breach[.]" 29 U.S.C. § 1109 (emphasis added).

Plaintiffs claim that Municipal paid other operating expenses while neglecting to pay its past-due fringe benefit contributions. (Pls.' Mot. Summ. J. 4.) Lettinga does not deny this. (Lettinga Dep. 32:12-33:14.) In his deposition, Lettinga described various operating expenses, such as wages, rent, suppliers, fuel, and utilities, Municipal paid while neglecting its contribution payments. (*Id.*) Lettinga's corroboration of Plaintiffs' claim that he continued to pay Municipal's operating expenses despite monthly shortfalls in its benefit contributions leads to "the inescapable and unrebutted conclusion that the company was being financed with plan assets" and that Plaintiffs are entitled to summary judgment with respect to Lettinga's breach of fiduciary duty. *See McGuire Steel*, 352 F. Supp. 2d at 806; *see also Plumbers Local*, 608 F. Supp. 2d at 879-80.

Defendants argue that Lettinga had no choice but to fall behind on his contribution payments if he was going to keep Municipal in business, and that he did the best he could under the circumstances. (Defs.' Br. 13.) But just because he has tough choices does not relieve Lettinga of his obligations under ERISA. As one court stated:

> Fiduciary violations may seem difficult to avoid when the corporation is in debt to the Fund because virtually any bills the corporation pays may be deemed uses of Fund assets. This is what the corporation and its controlling persons bargained for, however, when they agreed that unpaid contributions be deemed Fund assets. A ruling otherwise would improperly rewrite a collective bargaining agreement in a way that deprives one party, the Fund, of a useful debt collection procedure that the other party – the employer and its privies, agents , and controlling persons – freely agreed upon in a bargaining process that balanced both sides' benefits and detriments.

*McGuire Steel*, 352 F. Supp. 2d at 805 (quoting *NYSA-ILA Med. & Clinical Svs. Fund v. Catucci*, 60 F. Supp. 2d 194, 203 (S.D.N.Y. 1999)).

Defendants further argue that the following issues of material fact exist: Lettinga has gone for long periods of time without receiving compensation and has fallen behind on his rent, Municipal

8

has receivables that could be collected but for Plaintiffs' interference, and Chemical Bank has indicated that their secured interest in Defendants' receivables is superior to Plaintiffs. (Defs.' Resp. 9, 10, 11.) These arguments, however, are without merit.

First, in a more recent deposition, Lettinga said he paid rent until September 2010 and that although there have been weeks when he did not receive a salary as an "employee" of Municipal, he was still getting some paychecks as late as December 2010. (Pls.' Reply Ex. A, Dep. Al Lettinga, 66:10-67:25, Dec. 14, 2010.) Even if Lettinga has stopped receiving a salary, defendants claiming that their company simply did not have enough money to make the contributions have still been held personally liable. *See Plumbers Local*, 608 F. Supp. 2d at 875, 880.

Defendants' claim that Plaintiffs interfered with their ability to collect revenue and that therefore summary judgment is inappropriate is unpersuasive. Plaintiffs admit they contacted some general contractors to inform them that Municipal had not made its benefit contributions, but they contend that this is legally permissible and is, in fact, customary in the construction industry in Michigan. (Pls.' Reply 2.) Defendants' argument represents a less-forceful version of a similar claim that the *McGuire Steel* court disregarded. *See* 352 F. Supp. 2d at 797. In McGuire Steel, the defendant argued that the plaintiffs had filed liens against its construction projects and therefore impeded the defendant's ability to pay its fringe benefit contributions. *Id.* The court held that the plaintiffs did not wrongfully interfere with the defendant's business. *Id.* at 802. Plaintiffs were merely exercising their legal right to collect delinquent payments under state law. *Id.* In the instant case, the Court finds whatever phone calls Plaintiffs made to contractors legally insignificant to this motion.

Defendants' claim that the Court should deny Plaintiffs' motion for summary judgment

9

because it is unclear whether Plaintiffs or Chemical Bank have priority over Municipal's receivables is also unpersuasive. The Bank's claim to Defendants' receivables has no impact on whether or not Lettinga is a fiduciary under ERISA or whether he breached his fiduciary duty by using unpaid fringe-benefit contributions to cover other operating costs. The order in which Defendants' creditors get paid is a post-judgment issue that may arise when Plaintiffs attempt to enforce any judgment the Court awards against Municipal. Even if the Bank has a superior claim to Municipal's assets, that fact would not permit a reasonable jury to find that Lettinga did not breach his fiduciary duty, and therefore it is not a genuine issue of material fact. *See Plumbers Local*, 608 F. Supp. 2d at 876.

### IV.    Conclusion

Defendants have not raised a genuine issue of material fact regarding whether Lettinga breached his fiduciary duty by using unpaid fringe benefit contributions, which became Plan assets when they were due, for other operating expenses. As a result, he is personally liable under 29 U.S.C. § 1109. Accordingly, the Court GRANTS Plaintiffs' motion for summary judgment. The Court orders:

(1)   Judgment to be entered against Defendant Municipal in the amount of $96,275.17 against all Defendants for its unpaid contributions from the week ending March 7, 2010 through October 3, 2010 and $1,316.15 in liquidated damages for prior, late payments;

(2)   That, within 10 days of the date of entry of the Judgment, the Plaintiffs shall move to amend this Judgment to include the mandates of 29 U.S.C. § 1132(g)(2) upon further submission to the Court;

(3)   That Municipal allow Plaintiffs to conduct an audit for all time periods through the

    present to determine all other contributions owed in accordance with the CBA;

(4) That, once the audit is completed, the Judgment may be amended to include any additional amounts owed upon further submission to the Court;

(5) That this Court retain jurisdiction of this Judgment until these orders are satisfied.

**SO ORDERED**.

           S/Paul D. Borman
           PAUL D. BORMAN
           UNITED STATES DISTRICT JUDGE

Dated: March 24, 2011

## CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on March 24, 2011.

           S/Denise Goodine
           Case Manager