UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRUSTEES OF THE IRON WORKERS'
LOCAL NO. 25 PENSION FUND;
IRON WORKERS' HEALTH FUND OF EASTERN
MICHIGAN; IRON WORKERS LOCAL NO. 25
VACATION PAY FUND; and IRON WORKERS'
APPRENTICE FUND OF EASTERN MICHIGAN,          Case No. 10-cv-12502
Trust Funds Established and Administered
Pursuant to Federal Law,                                      Paul D. Borman
                                                              United States District Court Judge

                         Plaintiffs,

v.

MUNICIPAL & INDUSTRIAL STORAGE, INC.,
a Michigan Corporation, and AL LETTINGA,
Individually.

                         Defendants,

CHEMICAL BANK, a Michigan Banking Corporation,

                         Intervenor-Defendant.
_____/

OPINION AND ORDER
(1) DENYING IN PART PLAINTIFFS' MOTION TO AMEND JUDGMENT TO INCLUDE
AUDIT AMOUNTS (ECF NO. 80) AND
(2) GRANTING PRIORITY IN ESCROWED FUNDS TO INTERVENOR-DEFENDANT
CHEMICAL BANK

        This matter is before the Court on Plaintiffs' Motion to Amend Judgment to Include Audit

Amounts (ECF No. 80).  Defendants Municipal & Industrial Storage, Inc. ("MIS") and Al Lettinga

("Lettinga") filed a response (ECF No. 85) and Plaintiffs filed a reply (ECF No. 88).  Also before

the Court is the issue of priority as between Plaintiffs and Intervenor-Defendant Chemical Bank, in

certain escrowed funds.  In an Order dated November 21, 2011, the Court ordered Plaintiffs and

Chemical Bank to submit briefs on the issue of priority in certain garnished funds that are proceeds of certain of MIS's accounts receivable, currently being held escrow by the Clerk of this Court (the "Escrowed Funds"). (ECF No. 79.) The parties submitted briefs and the Court held a hearing on both the motion to amend the judgment and the issue of priority in the Escrowed Funds on March 8, 2012. The parties' efforts to resolve the matter without necessity of a ruling from the Court have come to a standstill.[1] Accordingly, for the reasons that follow, the Court DENIES IN PART Plaintiffs' motion to amend judgment and GRANTS priority in the Escrowed Funds to Intervenor-Defendant Chemical Bank.

## I. BACKGROUND

Defendant Municipal & Industrial Storage, Inc. ("MIS") is a signatory to a collective bargaining agreement ("CBA") with Iron Workers' Local 25 Union (the "Union"). Under the terms of the CBA, MIS agreed to pay fringe benefit contributions by the 26th day of each month following the month Union members completed covered work for MIS. MIS failed to make fringe benefit payments as they became due, and Plaintiffs, the Trustees of the Iron Workers' Local No. 25 Pension Fund, Iron Workers' Health Fund of Eastern Michigan, Iron Workers Local No. 25 Vacation Pay Fund and Iron Workers' Apprentice Fund of Eastern Michigan (collectively "Iron Workers" or the "Funds") filed the instant Complaint on June 24, 2010, to recover unpaid employee benefit contributions under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C.

_____

[1] On July 20, 2012, this Court denied Plaintiffs' motion to refer this matter to a Magistrate Judge for a settlement conference. (ECF No. 113, Order Denying Motion to Refer to Magistrate Judge.) As Chemical Bank pointed out in its response opposing Plaintiffs' motion to refer the matter for a settlement conference, the parties had just engaged in nearly two months of settlement talks and Plaintiffs had rejected Chemical Bank's latest settlement offer. There is no reason to believe that referring the matter to a Magistrate Judge for further settlement discussions would accomplish anything other than generating more attorneys' fees in this already over-litigated matter.

§ 1002 *et seq.* (ECF No. 1.)

On March 24, 2011, the Court granted the Funds' Motion for Summary Judgment. (ECF No. 36, Order.) The Court entered Judgment in favor of the Funds in the amount of $97,591.32; $96,275.17 in unpaid contributions and $1,316.15 in liquidated damages. (ECF No. 37, Judgment.) As part of its Order, the Court ordered that the Funds move to amend the Judgment to include amounts mandated under 29 U.S.C. § 1132(g)(2) upon further submission to the Court. The Court also ordered that MIS allow the Funds to conduct an audit for all time periods through the present to determine all other contributions owed in accordance with the CBA. (ECF No. 36.) On April 4, 2011, Plaintiffs submitted a Motion to Amend Judgment that did not include any additional amounts for unpaid contributions. (ECF No. 38, 4/4/11 Mot. to Amend Judg.) On April 11, 2011, the Court entered an Amended Judgment in favor of the Funds in the amount of $117,246.89. (ECF No. 39.)

In pursuit of satisfying their Judgment, Plaintiffs issued writs of garnishment to recover the proceeds of MIS's outstanding accounts receivable. On February 7, 2011, Chemical Bank filed a Motion to Intervene, claiming an interest in the garnished funds under a perfected security interest in MIS's accounts receivable. (ECF No. 32.) On April 22, 2011, the Court granted Chemical Bank's motion to intervene. (ECF No. 53.) On November 21, 2011, the Court ordered that the garnished funds be placed in escrow pending resolution of the priority dispute between Plaintiffs and Chemical Bank. (ECF No. 79.)

Plaintiffs claim that they are entitled to the Escrowed Funds because the unpaid contributions became vested Plan assets on the date they became due and owing, creating a trust for Plaintiffs' benefit in the unpaid contributions, and that therefore title to the Escrowed Funds, which represent proceeds of MIS's accounts receivable, rests with Plaintiffs. Intervenor-Defendant Chemical Bank

3

argues that its perfected security interest in MIS's accounts receivable attached on the date that each of the contracts with the garnishees was formed, at which time any unpaid contributions were still assets of MIS, giving Chemical Bank priority in the Escrowed Funds over Plaintiffs.

Plaintiffs also have filed a second motion to amend the judgment, seeking to recover for unpaid contributions (plus interest, liquidated damages and attorneys fees), including additional unpaid contributions allegedly only recently revealed in a revised audit.

## II.    ANALYSIS

### A.    The Motion to Amend Judgment to Include Audit Amounts

In their Motion to Amend Judgment to Include Audit Amounts (ECF No. 80), Plaintiffs ask the Court to amend its April 11, 2011 Amended Judgment in this matter to capture amounts allegedly due in unpaid fringe benefits for a period of time that, in part, was the subject of a prior action for unpaid fringe benefits.  That prior action was heard and finally resolved by Judge John Corbett O'Meara in *Trustees of the Iron Workers, et al. v. Municipal & Industrial Storage, Inc.*, No. 09-10706 (E.D. Mich. 2009).  (No. 09-10706, ECF No. 34, January 7, 2010 Amended Judgment Against Defendants.)  Judge O'Meara's final Amended Judgment ordered MIS and Lettinga to pay $65,243.69 for "contributions for period of June 21, 2009 through week of October 18, 2009."  *Id.* at 2.  On July 30, 2010, Plaintiffs filed a Satisfaction of Judgment in Judge O'Meara's case, stating that the "amended Judgment entered by this Court on  January 7, 2010 (Doc. # 34) against the Defendants has been satisfied in full.  This matter can now be dismissed."  (No. 09-10706, ECF No. 136, July 30, 2010 Satisfaction of Judgment.)

In the instant Motion to Amend Judgment, Plaintiffs seek in part to recover for fringe benefit payments that allegedly were due and owing but not paid, for a period of time beginning in July,

4

2009.  Plaintiffs claim that the fact that these amounts were due and owing only became known to them in the June, 2011 audit and thus they seek to recover them from this Court in this action.  (ECF No. 88, Pls.' Reply 2.)  However, as discussed *supra*, in the prior case before Judge O'Meara, on July 30, 2010, Plaintiffs entered a Satisfaction Judgment stating that the Amended Judgment entered by Judge O'Meara on January 7, 2010, awarding judgment in favor of Plaintiffs for contributions owed for the period June 21, 2009 through October 18, 2009, had been satisfied in full.  Plaintiffs apparently now have concluded, based upon the June 7, 2011 revised audit, that they accepted judgment for less than they actually were owed for the period of time that was covered by the Satisfaction of Judgment entered in Judge O'Meara's case.  They assert that this is an issue properly addressed by this Court in this action, which seeks judgment for unpaid contributions for a later period of time, i.e. March 7, 2010 to October 3, 2010.

In its prior Opinion and Order Granting Plaintiffs' Motion for Summary Judgment, this Court invited Plaintiffs to move to amend the Judgment, within ten days of entry of Judgment, to include the mandates of 29 U.S.C. § 1132(g)(2), based upon further submissions to the Court.  (ECF No. 36, 10.)  The Court further Ordered that MIS allow Plaintiffs to conduct an audit "for all time periods through the present to determine all other contributions owed in accordance with the CBA." *Id.* at 10-11.  In response, Plaintiffs submitted a Motion to Amend Judgment on April 4, 2011.  (ECF No. 38, Plaintiffs' Motion to Amend Judgment.)   In that motion, Plaintiffs sought judgment in the amount of $118,563.04, which included $96,275.17 for period of week ending March 7, 2010 through October 3, 2010." (ECF No. 38, p. 2.)  This earlier-filed motion to amend the judgment also sought interest on the unpaid contributions and liquidated damages, pursuant to 29 U.S.C. § 1132(g)(2). *Id.*  The Court ultimately awarded only the greater of the interest amount and the

5

liquidated damages amount and entered judgment against Defendants in the amount of $117,246.89. (ECF No. 39, April 11, 2011 Order Amending Judgment Against Defendants.)

Notably, the earlier-filed motion to amend did not refer to or rely on an audit or revised audit and did not seek to include judgment for amounts in addition to the originally determined $96,275.17 in unpaid contributions. Indeed, in his original request to Plaintiffs' accountants for a calculation of statutory interest, Mr. Henzi, counsel for Plaintiffs, requested that the accountants "calculate statutory interest for fringe benefit contributions totaling $96,275.17, which represents work performed from the week ending March 7, 2010 through October 3, 2010." (ECF No. 38-3, April 4, 2011 Memorandum from Henzi to Kenneth Slate, CPA.)

In the instant Motion to Amend Judgment, Plaintiffs now seek to recover a greater sum of unpaid contributions, having now conducted a revised audit that apparently unearthed previously unknown amounts of unpaid contributions. (ECF No. 80-1, Ex. A, June 7, 2011 Letter from Stefansky, Holloway & Nichols, Inc. Payroll Auditing Services to MIS.) It is not clear from the documents attached to Plaintiffs' motion when the revised audit was requested, but the results appear to have been communicated to Defendants on June 7, 2011, with a directive to notify the accountant within fifteen (15) days of the date of the letter as to any disagreements with the revised audit calculations. (ECF No. 80-2, June 7, 2011 Letter from Fund Auditor to MIS.) . On June 27, 2011, Mr. Henzi requested the Plaintiffs' accountants, Ken Slate, to recalculate interest based on the revised audit figures. (ECF No. 80-2 p. 3, June 27, 2011 Memorandum from Henzi to Ken Slate.)

The Court concludes that Plaintiffs are not entitled to recover amounts that represent or relate to unpaid contributions that are alleged to have been withheld during the period of time covered by the prior action as to which final judgment was entered by Judge O'Meara on January 7, 2010 and

6

as to which a Satisfaction of Judgment was entered by Plaintiffs on July 30, 2010. By Plaintiffs' own admission in their July 30, 2010 Satisfaction of Judgment filed in Judge O'Meara's case, Defendants have satisfied their obligations for amounts of unpaid contributions up to and including October 18, 2009. Now, several years and several audits later, Plaintiffs have discovered that their previous audit efforts failed to uncover allegedly unpaid contributions that were never brought to Judge O'Meara's attention. The Plaintiffs have provided this Court with no legal authority or even argument to support its request that this Court in effect reach back and amend Judge O'Meara's judgment, which Plaintiffs themselves conceded has been fully satisfied. The Court is not obligated to search for a supporting legal argument or theory. "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court . . . to put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, (6th Cir. 1997) (internal citations and quotation marks omitted). Plaintiffs will be prevented in this action from reaching back for alleged unpaid contributions, or for any liquidated damages relating to or interest thereon, for any period of time prior to October 19, 2009.

Accordingly, Plaintiffs shall submit a revised motion to amend the judgment in this action, which is based only upon unpaid contributions post-dating October 18, 2009. Plaintiffs will not be entitled to recover any additional amounts that they may incur going forward, in connection with any further audits, interest recalculations or attorneys' fees, as a result of complying with this Order. Additionally, as the Court noted in its April 4, 2011Order originally amending the Judgment in this case, Plaintiffs are "not entitled to count the interest on the unpaid contributions *and* the liquidated damages provision . . . but only the greater of those two numbers" under § 1132(g)(2)(C). Plaintiffs' revised motion to amend the judgment shall reflect this ruling, which applies with equal force to the

7

instant motion to amend the judgment.

     **B.**    **Priority in the Escrowed Funds**

Chemical Bank asserts a prior perfected security interest in the Escrowed Funds, which are proceeds of certain of MIS's accounts receivable, currently being held in escrow by the Clerk of this Court pursuant to this Court's November 21, 2011 Order Adopting the Magistrate Judge's Report and Recommendation. (ECF No. 79.)[2] Chemical Bank and MIS have a commercial lending relationship. Plaintiffs do not challenge Chemical Bank's assertion that it took all appropriate steps to obtain a security interest in MIS's accounts receivable. Plaintiffs do not question that the relevant Security Agreements, dated March 23, 2007 and March 24, 2012, were validly executed and identify MIS's accounts receivable as collateral. Nor do Plaintiffs dispute that MIS's contracts with each of the garnishees created an account under governing Michigan law. (MCL § 440.9102(1)(b)).

Thus, while Plaintiffs acknowledge that Chemical Bank has a perfected security interest in MIS's accounts receivable, they nonetheless assert that Chemical Bank's security interest in MIS's accounts receivable never attached to the Escrowed Funds because Plaintiffs acquired lien rights in those in the Escrowed Funds that gives them rights superior to Chemical Bank. Plaintiffs also argue that Chemical Bank improperly exercised its status as a secured priority lender by acting as a Plan fiduciary and directing MIS not to pay fringe benefit contributions.

---

[2]  Chemical Bank's motion relates to the Escrowed Funds currently being held in escrow as identified in this Court's November 21, 2011 Order. (ECF No. 79). The Order requires Plaintiffs, to the extent they are in receipt of any garnished funds, to remit such amounts to the Clerk of the Court to be held in escrow pending resolution of this priority dispute. On July 23, 2012, Plaintiffs requested several additional writs that issued that same day. The Court is unaware if these writs yielded any payments to Plaintiffs or whether Chemical Bank would claim an interest in such funds.

1.    **Contributions Became Plan Assets on the Date on Which They Became Due and Owing, the 26th Day of the Month Following the Month in Which the Covered Hours Were Worked, and Such Funds Were Assets of MIS Prior to the Date on Which They Became Due and Owing Under the Plan, Subject to Chemical Bank's Prior Perfected Security Interest That Attached on the Date That Contracts Were Formed Between the Garnishees and MIS for Services to be Performed**

Plaintiffs' articulate their argument in support of their claim to priority in MIS's accounts receivable as follows:

> On each occasion that Municipal failed to pay contributions, the unpaid contributions became Plan assets on the date due. Thus, all unpaid fringe benefit contributions are assets of the Plan, not of Municipal. For example, when Municipal . . . elected to not pay fringe benefits, the amount of the unpaid fringe benefit contributions automatically became assets of the Plan and ceased being Municipal's assets on the date the unpaid contributions were due.

ECF No. 87, Pls.' Priority Br. 4. Thus, Plaintiffs concede that prior to being due and owing, the amounts that became Plan assets as unpaid contributions were assets of MIS. This acknowledgment is fatal to Plaintiffs' priority claim. Plaintiffs have failed to acknowledge, or to rebut, Chemical Bank's contention that prior to becoming due and payable on the 26th day of each month for work performed in the preceding month, the moneys due and payable as fringe benefits were assets of MIS, to which Chemical Bank's security interest attached as of the date the contracts for the work were executed by MIS and each of the garnishees.

Plaintiffs never dispute that the garnished funds being held in escrow are the proceeds of outstanding MIS accounts receivable. Nor do Plaintiffs dispute Chemical Bank's claim that MIS owes Chemical Bank a combined total of $1,190,873.61 plus interest under a series of promissory notes executed by MIS. Nor do Plaintiffs' contest Chemical Bank's interpretation of the applicable provisions of Michigan's Uniform Commercial Code, under which Chemical Bank properly perfected its security interest in MIS's accounts receivable: (1) Chemical Bank gave value to MIS

9

in exchange for the Security Agreements dated March 23, 2007 and March 24, 2010; (2) the Security Agreements granted Chemical Bank a continuing interest in MIS's accounts receivable; (3) Chemical Bank filed a Financing Statement on March 21, 2007 to perfect its security interest; and (4) Chemical Bank's interest in each of the accounts receivable attached at the time that MIS entered into each of the contracts with the garnishees, creating an "account" under the UCC by giving MIS the right to payment, whether or not earned by performance. Nor do Plaintiffs' dispute that Chemical Bank's priority in these accounts receivable dates back to March 21, 2007, the date on which it filed its financing statement. *See* Chemical Bank's Br. 5-7. Plaintiffs acknowledge that Chemical Bank perfected its security interest in MIS's accounts receivable as claimed. Indeed, Plaintiffs never mention the provisions of the Michigan UCC in either their Brief or their Reply. Plaintiffs merely state that "Chemical Bank's argument in support of its priority is temporal, only." The Court has no idea what this means.

Plaintiffs state that this Court previously held that unpaid benefit contributions became Plan assets on the date that they were due owing, and that Plaintiffs' interest in any unpaid fringe benefit contributions vested when the unpaid contributions became due and owing. True though this statement may be, it totally ignores Chemical Bank's argument that when the unpaid contributions became due and owing, which everyone concedes was on the 26th day of the month following the month in which the covered work was performed, Chemical Bank's prior perfected security interest had already attached to the accounts receivable from which Plaintiffs are now attempting to collect their judgment. Plaintiffs offer no legal authority, either under ERISA or Michigan law, for the proposition, central to their claim, that on the 26th of each month, when unpaid contributions became due and owing, Chemical Bank's perfected security interest was extinguished. Plaintiffs

10

do not refer the Court to any provisions of ERISA that would grant such priority. Chemical Bank argues that the only section of ERISA that does address the issue of priority of a benefit fund over a secured creditor is 29 U.S.C. § 1368, which provides that the Pension Benefit Guaranty Corporation has priority over other secured creditors under limited circumstances. By implication, Chemical Bank argues, the absence of any other reference in ERISA addressing priority vis-a-vis secured creditors dictates that the Michigan UCC rules apply and establish Chemical Bank's prior perfected security interest. Absent some legal support for defeating Chemical Bank's prior perfected security interest, Plaintiffs are judgment lien creditors whose rights in the accounts receivable are subordinate to Chemical Bank's status as a secured creditor.

Plaintiffs analogize, again without legal support, their claimed lien on the accounts receivable to the statutory lien created under the Michigan Builders Trust Fund Act, MCL § 570.151 *et seq.* ("MBTFA"). While Plaintiffs appear to acknowledge that the MBTFA does not apply in this case because the projects that generated the accounts receivable were public projects, *see In re Certified Question from U.S. Dist. Court for the Eastern Dist. of Michigan*, 411 Mich. 727 (1981) (holding that the MBTFA does not apply to public construction projects), they assert that "much like the law pertaining to MCL § 570.151, the Michigan Builders Trust Fund Act, the amounts in question are being held in trust for the workers who performed the labor for which their healthcare, pension, vacation and other benefits have not been paid." (Pls.' Br. 6.) "Since the [MBTFA] does not apply to create a constructive trust, the Court must look to the agreements" to determine whether any similar trust was created and, if so, whether such a trust can serve to defeat Chemical Bank's security interest. *Merchants Bonding Co. v. Utica Community Schools*, No. 01-60194, 2003 WL 21456626, at *5 (E.D. Mich. May 2, 2003) (holding that without a provision in the controlling

11

documents requiring the contractor to create and hold funds in a separate dedicated trust fund for the specific benefit of third persons, no constructive trust is created).

Other than their reliance (by inapt analogy as discussed *infra*) on the MBTFA, which by its terms does not apply to the Escrowed Funds, Plaintiffs offer no legal or factual support for their assertion that the Escrowed Funds "were held in trust" such that Plaintiffs' have a lien on MIS's accounts receivable that is superior to Chemical Bank's perfected security interest in MIS's accounts receivable. Plaintiffs cite cases in which courts have held that, once contributions become due, they are vested assets of the Funds and an employer as an ERISA fiduciary cannot choose to divert those funds to pay other obligations of the company, including to pay a secured creditor. These cases would be relevant if the issue before the Court was whether or not Defendants breached their fiduciary duties and are therefore liable under ERISA for failing to make fringe benefit contributions to the Plaintiff Funds. But this is not the issue before the Court – this Court has already entered judgment in Plaintiffs' favor on this issue.

The issue before the Court now is who has priority in MIS's outstanding accounts receivable now that judgment against MIS has been entered and Plaintiffs are seeking to satisfy that judgment. As discussed *supra*, Chemical Bank's interest attached to MIS accounts receivable at the time that the contracts with the garnishees were formed. By Plaintiffs' own admission, the unpaid fringe benefits were assets of MIS up until the date on which they became due and owing, at which time "the amount of the unpaid fringe benefit contributions automatically became assets of the Plan and ceased being Municipal's assets on the date the unpaid contributions were due." (ECF No. 87, Pls.' Priority Br. 4.) The Funds interest therefore attached on the 26th day of the month following the month in which the hours were worked, after Chemical Bank's security interest attached to the

12

accounts receivable in each and every case. There is no evidence that prior to the date on which they became due and owing, the unpaid contributions were held in a special dedicated trust for the benefit of Plaintiffs. Indeed, Plaintiffs concede that prior to becoming due and owing on the 26th of each month, the unpaid contributions were assets of MIS. To be sure, if the unpaid contributions never became assets of MIS, and were held in trust from the time the contracts with the garnishees were executed, these assets could not be pledged as collateral and Chemical Bank's security interest could not attach. This is the mechanism statutorily created under the MBTFA for private projects. This mechanism does not apply here and the trust language does not deem these assets Plan assets until they become due and owing on the 26th of each month. Plaintiffs have not provided the Court with any basis to disregard the fact that Chemical Bank's interest in the accounts receivable attached before the unpaid contributions became Plan assets or to conclude that Plaintiffs have a lien interest that trumps Chemical Bank's on the facts of this case.

At least one district court that has addressed this issue, has concluded that in such a situation the secured creditor has priority. In *Chicago District Council of Carpenters Pension Fund v. Tessio Construction Co.*, No. 02-4987, 2003 WL 21312664 (N.D. Ill. June 4, 2003), the plaintiff pension funds sought to satisfy a judgment obtained against the defendant for unpaid employee benefit fund contributions. Plaintiffs sought to recover the amounts owed under the judgment from the proceeds of defendant's accounts receivable. A bank that had earlier taken and perfected a security interest in the defendant's current and future accounts receivable as collateral for a loan filed an adverse claim to the proceeds of defendant's accounts receivable. The Magistrate Judge issuing the opinion resolved the priority dispute in favor of the bank, concluding that the plaintiff funds were judgment lien creditors whose claim to defendant's accounts receivable was inferior to the bank's prior

perfected security interest:

> The law unequivocally shows that the Bank's security interest trumps Plaintiff's lien. . . . The Bank filed a UCC financing statement on July 10, 2002, prior to the September 25, 2002 agreed judgment in favor of the Pension Fund, and prior to Pension Fund's filing of its Citations to Discover the Debtor's Assets on October 25, 2002. In addition, the Bank argues—and the Pension Fund does not deny that the Debtor obviously became entitled to receive any future accounts receivable prior to the entry of the judgment lien in September of 2002, because the Debtor ceased all operations in July of 2002. Thus, the Bank's security interest in any accounts receivable, due either before or after the UCC statement was filed on July 12, 2002, was perfected prior to the entry of judgment against the Debtor in September of 2002. Therefore, the Bank's perfected security interest is superior to the Pension Fund's judgment lien against the Debtor.

2003 WL 21312664, at *3 (footnote omitted).  Responding to the funds "passionate" argument, also made by the Plaintiffs in the instant case, that "permitting the Bank's security interest to trump its judgment lien would be contrary to ERISA and the Trustees' fiduciary duties, and would be terribly unfair to the carpenters who worked for the Debtor," the court reasoned:

> Notably, ERISA is devoid of any provisions that would authorize this Court to disregard the Bank's perfected security interest, in favor of the Pension Fund's judicially-created lien. Nor does the UCC suggest that its provisions should apply less stringently in an effort to alleviate harsh consequences when ERISA is merely implicated. Further, the Court fails to see—and the Pension Fund does not articulate—how the Fund Trustees' fiduciary obligations to the beneficiaries of their Fund has any bearing on the issue at hand.

> Finally, the Court is not unsympathetic to the plight of the beneficiaries who may be impacted by the enforcement of the Bank's perfected security interest. However, as the Bank points out, the equities are not clearly in the Pension Fund's favor; it is debatable whether the Bank's financing or the carpenters' work played a more significant role in contributing to the creation of the accounts receivable. More importantly, the certainty provided to businesses by the UCC enables commercial enterprises to analyze risk and make business decisions with a certain degree of predictability. The Court is not inclined to abandon this well-established system of relative reliability created by the UCC, simply because it might work a hardship on the Pension Fund's beneficiaries in this case.

2003 WL 21312264, at *4-5.  Other courts, while not expressly discussing the priority issue, have

14

presumed a benefit fund's status as a judgment creditor when seeking to satisfy a judgment awarding unpaid employee contributions, recognizing the superiority of a bank's prior perfected security. *See, e.g. Vengurlekar v. HSBC Bank USA*, No. 03-cv-243, 2009 WL 362003, at *4 (S.D. N.Y. Feb. 11, 2009) (noting, in the course of concluding that HSBC was not a fiduciary of the plan, that "HSBC had a prior perfected security interest in all of the company's assets, including any available cash from which Silverline could have paid contributions, HSBC's outstanding claims against the company at all times exceeded Silverline's available assets, and there is no evidence that the Plan itself was anything other than an unsecured creditor of the company").

Although conceding that the projects that yielded the funds that are currently held in escrow are public projects, and therefore that the MBTFA technically does not apply, Plaintiffs assert, without citation to any legal authority, statutory or otherwise, that "Plaintiffs have priority because the funds were held in trust for the benefit of laborers on a construction project." (ECF No. 87, Pls.' Reply Br. 5.) Plaintiffs state this proposition as being wildly self-evident and beyond dispute and refer the Court to *Selby v. Ford Motor Co*., 590 F.2d 642, 649 (6th Cir. 1979), a case in which the MBTFA did apply and the court held that the express statutory trust created by the MBTFA should be given effect in bankruptcy. Whatever the merits of the *Selby* decision may be, it is simply not applicable in this case where the MBTFA concededly does not apply to these proceeds generated from the accounts receivable of public construction projects. Were these private construction projects, subject to the express statutory trust provisions of the MBTFA, the Court assumes that Chemical Bank never would have intervened in this action. This very issue was discussed with counsel at the hearing on this matter. Mr. Henzi, on behalf of the Plaintiffs, argued that banks know from the "get go" if they are loaning money on a job to which the MBTFA applies that they are

15

going to stand in line behind the funds.   He then stated, acknowledging the MBTFA does not apply to these four projects, that nonetheless the same result should obtain because "the fringe fund amounts are vested plan assets and held in trust."  Unfortunately, Plaintiffs have provided the Court with no basis to conclude that some type of constructive trust, like the statutory trust created when the MBTFA applies, has been created here.  As Ms. Von Eitzen, representing Chemical Bank, pointed out in reply to these remarks, it is precisely because these were public projects, to which the MBTFA does not apply, that Chemical Bank had no reason to believe, "from the get go" or otherwise that their secured interest would be secondary to the Plaintiff funds claims for unpaid benefits.  Plaintiffs have provided the Court with no authority for their claim that a similar type of trust is created in this case, where the MBTFA does not apply, that would give Plaintiffs lien rights superior to Chemical Bank's secured interest in the proceeds of MIS's accounts receivable.

The Court finds support for its conclusion that no express or constructive trust in Plaintiffs' favor has been created in this case that would trump Chemical Bank's security interest, in the Sixth Circuit's reasoning in *In re Bucci*, 493 F.3d 635 (6th Cir. 2007).  In *Bucci*, the Sixth Circuit held that a company's contractual agreement under a CBA to pay pension and fringe benefit contributions did not create a trust similar to the trust imposed under the MBTFA that would support a discharge exception for defalcation (fraud committed while acting as a fiduciary) in a bankruptcy proceeding. The trust agreements at issue, like the agreements in the instant case, provided that the trust funds included as assets all employer contributions received or due to be received by the employer.  The court assumed, for the sake of argument, that the unpaid employer contributions, as here, qualified as ERISA plan assets.  493 F.3d at 642.  Specifically, the court was called upon to decide whether "a debtor's status as an ERISA fiduciary [was] alone sufficient to create an express trust for

16

purposes of § 523(a)(4) [of the Bankruptcy Code creating an exception to dischargeability in the case of defalcation]. *Id*. at 643. As an example of the type of trust relationship that does create an express trust, the court cited the statutory trust created under the MBTFA:

> The court held in [*Carlisle Cashway, Inc. v. Johnson (In re Johnson),* 691 F.2d 249 (6th Cir. 1982)] that Michigan's Building Contract Fund Act created a trust relationship sufficient to satisfy the express or technical trust requirement. The Act defined the trust res as all payments made to a contractor for the benefit of laborers, subcontractors, or materialmen. *In re Johnson,* 691 F.2d at 252. The Act defined the contractor as the trustee and imposed on the contractor a duty to "use the money in the building contract fund to first pay laborers, subcontractors and materialmen on the particular project for which the funds were deposited before he uses the funds for any other purpose." *Id*. The fiduciary relationship established by the Act arose when a payment was made to a contractor, not whenever a contractor misappropriated the funds; thus, the Act imposed duties on the trustee prior to any act of wrongdoing. *Id.* ("[S]tatutes which impose a trust ex-maleficio are not within the scope of [the defalcation provision] since such trusts only arise upon an act of misappropriation."). The court therefore concluded that the Act imposed a trust relationship that satisfied the Bankruptcy Code's defalcation provision. *Id. See also* [*Capitol Indemnity Corp. v. Interstate Agency, Inc. (In re Interstate Agency)*, 760 F.2d 121 (6th Cir.1985)] at 124-25 (finding that an express trust was created by a state statute requiring insurance agents to hold premium payments received from an insured in trust and turn them over to the insurance company principal).
>
> The Funds argue that an express trust was created here under ERISA. They contend that the employer contributions were plan assets under ERISA and constituted the trust res. They further argue that Bucci met the definition of an ERISA trustee because he exercised control over the assets by choosing to not pay the contributions. *See Moore v. LaFayette Life Ins. Co.*, 458 F.3d 416, 438 (6th Cir. 2006) (definition of a fiduciary under ERISA includes person "who exercises discretionary control or authority over a plan's management, administration, or assets."). According to the Funds, ERISA imposed on Bucci certain management duties requiring him to hold the plan assets for the benefit of his employees.

*Bucci*, 493 F.3d at 640. Rejecting the argument that being an ERISA fiduciary created the type of trust relationship found sufficient to create an express trust in *In re Johnson* and *In re Interstate Agency*, *supra*, the Sixth Circuit explained:

> We made clear in *In re Johnson* that "the requisite trust relationship must exist prior to the act creating the debt and without reference to it." *In re Johnson*, 691 F.2d at

17

> 252 (citing *Davis*, 293 U.S. at 333-34, 55 S.Ct. at 153-54). The court in both *In re Johnson* and *In re Interstate Agency* examined the state statutes at issue and found that they established the requisite trust relationship because they imposed trusts existing separate from the act of wrongdoing and independent of any contractual obligation to make a payment.

*Id*. at 642.  Finding that the trust agreements entered into by the parties pursuant to the governing CBA, which denominated unpaid employer contributions that were paid or due as fund assets, did not create a trust like the statutory trust created under the MBTFA, the Sixth Circuit concluded:

> The Funds' argument illustrates the problem with treating a debtor's status as an ERISA fiduciary as alone being sufficient to create an express or technical trust for purposes of § 523(a)(4). The act that created the debt - Bucci's breach of his contractual obligation to pay the employer contributions - is also the exercise of control that the Funds allege made Bucci an ERISA fiduciary. But for a trust relationship to satisfy § 523(a)(4), the alleged fiduciary must have duties that preexist the act creating the debt. *Davis*, 293 U.S. at 333, 55 S.Ct. at 154; *In re Johnson*, 691 F.2d at 252.
>
> The Funds' reliance on *Iron Workers' Local No. 25 Pension Fund v. McGuire Steel Erection, Inc*., 352 F. Supp.2d 794 (E.D. Mich. 2004) does not help their argument. In *Iron Workers*, the court held that unpaid employer contributions became ERISA plan assets when the contributions became due. *Iron Workers*, 352 F. Supp. 2d at 804. The court further held that the employer "acted as an ERISA fiduciary to the extent he exercised any authority or discretion over the disposition of those contributions and withholdings after they became due." *Id*. at 805. The holding in *Iron Workers* serves to underscore the problem: if an employer failing to pay contributions becomes an ERISA fiduciary only after the contributions are due, then the trust relationship springs from the act from which the debt arose. Such a trust relationship does not create an express or technical trust for purposes of § 523(a)(4).

*Bucci*, 493 F.3d at 643.  So too here.  Plaintiffs concede that the unpaid contributions became plan assets when MIS failed to pay them when they became due and owing.  Before they became due and owing, their was no fiduciary obligation to pay them and therefore no trust relationship existed that predated the attachment of Chemical Bank's security interest.  MIS had a contractual obligation to pay the employer contributions.  MIS did not hold the funds in trust until they became due and owing.  MIS did not have an obligation to pay the contributions until the 26th day of the month

following the month in which the covered work was performed.  MIS's contractual obligation did

not create an express or technical trust (like the MBTFA does) and therefore Plaintiffs' alleged

constructive lien did not arise until after Chemical Bank's prior perfected security interest attached.

In deciding the issue of priority, in order to find for Plaintiffs, the Court would have to

conclude that prior to becoming due and owing on the 26th of each month, the Funds had a lien on

the unpaid contributions that arose from some other source, either statutory or otherwise.  *Bucci*

directs that no such trust was created in this case until after the obligation to pay arose.  Nothing

directed MIS to hold those funds, which were MIS assets under Michigan UCC law beginning on

the date the contract for the work was executed, in trust for the benefit of the Plaintiff funds prior

to the date on which they became due and owing, at which time Chemical Bank's security interest

had already attached to those assets.

No trust was possibly created until Municipal failed to pay fringes that were due and owing.

Plaintiffs assert this in their Reply Brief that "Plaintiffs' interest [in unpaid fringe benefit

contributions] triggered when the unpaid contributions became due."  And later in their Reply Brief,

Plaintiffs' acknowledge: "Here, Municipal's owner, Al Lettinga, owed a fiduciary duty to pay fringe

benefits on the day they were due.  When he failed to pay timely, the fringes became vested Plan

assets."  (ECF No. 87, Pls.' Reply Br. 6.)   This is consistent with this Court's prior ruling that

benefit contributions became Plan Assets on the day they became due and owing, which is the 26th

day of the month following the month in which the work on which they are earned is performed.[3]

---

[3] In their Reply Brief, Plaintiffs state that in fact Municipal made weekly contributions to the Fund
because it did not have a surety bond.  (ECF No. 87, Pls.' Reply Br. 3-4.)  This disputed fact is not
material as there is no dispute that the payments were not "due and owing" until the 26th of the
month following the month in which the work was performed and, in any event, any payments
necessarily were made following the formation of a contract for the work, which is the event that
created the account receivable to which Chemical Bank's perfected security interest immediately

But Plaintiffs fail to address Chemical Bank's argument that it had a prior perfected security interest in Municipal's accounts receivable that attached to those accounts at the time they were created and related back to Chemical Bank's original filing of its financing statement in 2007.

There appears to be no dispute that Chemical Bank properly perfected its interest in Municipal's accounts receivable. Plaintiffs have not challenged or attempted to refute Chemical Bank's claim that it holds a perfected security interest in Municipal's accounts receivable and that Municipal's contracts with each of the Garnishees is an "account" under the UCC. *See* MCL 440.9102(1)(b). While not challenging Chemical Bank's perfected security interest in Municipal's accounts receivable, Plaintiffs assert that "Plaintiffs have priority [over the accounts receivable] because the [garnishee's] funds were held in trust for the benefit of laborers on a construction project." This argument would have force if these were private construction projects that generated the accounts receivable on which Chemical Bank seeks to recover. Chemical Bank submitted the Affidavit of Al Lettinga stating that each of the projects that is the subject of this priority dispute is a public project. (ECF No. 86, Chemical Bank Reply Ex. C, January 12, 2012 Declaration of Al Lettinga ¶¶ 2-3.)

Municipal owed a duty to pay fringe benefits "on the day they were due." Prior to the date on which they were due, they were not held in trust by Municipal but were assets of Municipal which were subject to Chemical Bank's security interest. Distinguishing the creation of a constructive trust under ERISA from the express creation of a trust under the MBTFA, the Sixth Circuit in *Bucci* noted: "The fiduciary relationship established by the [MBCFA] arose when a payment was made to a contractor, not whenever a contractor misappropriated the funds; thus the

---

attached.

20

[MBCFA] imposed duties on the trustee prior to any act of wrongdoing." 493 F.3d at 640. The Court then held that the fiduciary duties imposed by ERISA do not arise until the employer opts not to pay employer contributions when they are due. *Id*. at 643. Because "the trust relationship springs from the act from which the debt arose," and there were no fiduciary duties "that preexisted the act creating the debt," the Sixth Circuit held that such a trust was not express or technical for purposes of dischargeability of the unpaid contributions under the Bankruptcy Code. *Id*.

While Plaintiffs would like this Court to conclude that the unpaid contributions in this case are subject to the type of express trust created by the MBCFA, the Sixth Circuit's holding in *Bucci* suggests otherwise. Plaintiffs have provided no authority for the proposition that these particular employer contributions were held in trust expressly for the benefit of the Plaintiffs at any time before the date on which they became due and owing. Prior to that time, as Plaintiffs concede, they were MIS assets, properly pledged as collateral to Chemical Bank. There is no basis proffered on which the Court can conclude that by statute or otherwise, a lien was created in Plaintiffs' favor prior to the time that Chemical Bank's security interest attached that should override or displace state law rules of priority under the Michigan Uniform Commercial Code. Chemical Bank is entitled to the Escrowed Funds.

**2.    Chemical Bank Did Not Act as a Fiduciary of the Plan and Did Not Act to "Nullify" its Secured Creditor Status**

Plaintiffs argue that Chemical Bank has acted as a fiduciary over MIS plan assets and acted improperly in its position as secured creditor, "nullifying" its secured creditor priority standing. (ECF No. 84, Pls.' Priority Br. 8.) There is no record evidence to support these assertions or to support the contention that Chemical Bank ever instructed MIS not to pay fringe benefits. Chemical Bank made the business decision to continue to loan MIS money after giving MIS notice of default

21

on October 8, 2010. (ECF No. 83-10, Ex. I, Dec. 23, 2011 Declaration of Steven Hawkins ¶¶ 12-13.) MIS owes Chemical Bank in excess of $1 million dollars on the defaulted loans and lines of credit. To maximize its chances of recovering from MIS "Chemical Bank made the business decision to allow MIS to make certain conservative withdrawals . . . Chemical Bank feared that if it closed this line of credit, MIS would have been unable to complete its projects and Chemical Bank would lose the possibility of recovering accounts receivable for those projects." *Id.* ¶¶ 13, 16. In his deposition, Mr. Lettinga testified that Chemical Bank made the decision whether they would loan MIS additional dollars based on requests from MIS to pay certain bills, but that he, Mr. Lettinga, was singularly authorized to write checks for MIS. (ECF No. 84, Pls.' Priority Br. Ex. B, Dec. 14, 2010 Deposition of Allan Lettinga, 59-61.) Both Steven Hawkins of Chemical Bank and Mr. Lettinga testified that Chemical Bank never instructed him not to pay fringe benefits. (ECF No. 83, Chemical Bank's Priority Br. Ex. H, May 18, 2011 Deposition of Allan Lettinga, 58; Hawkins Decl. ¶ 14.) Apart from Plaintiffs' unsupported allegations in their briefs, this is the record evidence and it is insufficient to establish that Chemical Bank acted improperly in its position as a secured creditor of MIS or that by continuing to advance money to MIS after notice of default, it became an ERISA fiduciary.[4]

---

[4] Nor is there record evidence to support Plaintiffs' assertion in their brief that Chemical Bank waived its priority status by allowing some fringe benefits to be paid. (ECF No. 84, Pls.' Priority Br. 8.) As counsel for Chemical Bank explained to the Court at the hearing on this matter, and as Mr. Henzi finally conceded at the hearing, there was a period of time after default when, pursuant to an agreement among Chemical Bank, MIS and Plaintiffs, when accounts receivable came in, Chemical Bank was allowing the Plaintiff Funds to take the amounts from those payments that were earmarked for fringe benefits and allowing MIS to use the remainder to pay down the loan balance. (Hr'g Tr. 19, 25.) Only when Plaintiffs began filing garnishments, and seeking to recover a greater amount than the parties had agreed to, did Chemical Bank intervene and assert its priority position, which it had never agreed to waive. (ECF No. 86, Pls.' Reply 7.) Chemical Bank was willing to work with Plaintiffs, notwithstanding its belief that it had priority over the total amount of certain accounts receivable. Mr. Henzi acknowledged that there was an agreement but that Plaintiffs

In *Vengurlekar*, *supra*, after Silverline, the company in whose accounts receivable HSBC held a perfected security interest, defaulted on their loan commitments to HSBC, HSBC sued Silverline in the Southern District of New York seeking immediate possession of the collateral. 2009 WL 362003, at *1. The district court denied the request for immediate seizure of assets but issued a preliminary injunction requiring Silverline to report to HSBC on its business prospects and prohibiting Silverline from using the proceeds from any accounts receivable for any purpose other than ordinary course of business expenses. *Id*. HSBC hired a consulting firm, Getzler, to analyze Silverline's financial position and to "help staunch Silverline's financial deterioration." *Id*. at *2. Mark Samson, Getzler's representative, "could, and did, make recommendations to Silverline as to how available cash should be expended, but Silverline was under no obligation to follow his recommendations." *Id*. Although Samson actually took physical control of Silverline's checkbook, he "did not have the authority to sign any checks on behalf of Silverline, and, in the course of Getzler's engagement, Getzler never refused a request by Silverline for the distribution of a check." *Id*. Concluding that neither HSBC nor Getzler exercised sufficient control over the disposition of Silverline's assets to establish either as an ERISA fiduciary with respect to Silverline's unpaid employee contributions, the court noted:

> Silverline and HSBC agreed that HSBC would "sweep," as payments against the credit facility, all proceeds from Silverline's accounts receivable that were deposited in Silverline's HSBC bank account(s) on a regular basis, and approximately $6 million in proceeds from accounts receivable were ultimately swept by HSBC. At no point, however, did HSBC or Getzler have any authority or discretion in the administration or management of any pension plan, and neither entity ever directed Silverline to pay or not pay withheld employee or required employer contributions into any pension plan.

---

ultimately decided to seek more than the "take it or leave it" arrangement with Chemical Bank. This litigation over priority followed.

2009 WL 362003, at *2.  The court concluded that "even assuming that the company's general assets

could be deemed to have included plan assets by reason of the reported but unfulfilled withholdings,

Plaintiffs have failed to prove that either of the Defendants exercised discretionary control over the

management or disposition of the company's assets or had any discretionary authority, responsibility

or control respecting 401(k) Plan management or administration at any time from July 20, 2001 to

September 20, 2002, the period during which contributions became due and owing to the plan." *Id*.

at *4.  The court distinguished the Second Circuit's opinion in *LoPresti v. Terwilliger*, 126 F.3d 34

40 (2d Cir. 1997), where the court had concluded that "defendant was an ERISA fiduciary where

he 'had a role in determining which bills to pay, in that he decided which creditors were to be paid

out of the Company's general account (which, during the relevant time frame, included employee

Fund contributions), and when those creditors were to be paid'"). *Vengurlekar*, 2009 WL 362003,

at *4 (quoting *Terwilliger*, 126 F.3d at 40).  Noting, as indicated *supra*, that HSBC had a prior

perfected security interest in Silverline's assets that would trump, in any event, the funds's

unsecured creditor status, the court in *Vengurlekar* concluded:

> Moreover HSBC had a prior perfected security interest in all of the company's assets,
> including any available cash from which Silverline could have paid contributions,
> HSBC's outstanding claims against the company at all times exceeded Silverline's
> available assets, and there is no evidence that the Plan itself was anything other than
> an unsecured creditor of the company. Any secured creditor's exercise of its superior
> rights is likely to affect adversely the ability of an unsecured creditor to recover what
> is owed (indeed, that is the premise of secured transactions), and the mere exercise
> of these rights created pursuant to ordinary commercial customs, without more, does
> not automatically endow the secured lender with fiduciary responsibilities to the
> unsecured creditors of the borrower, including employee benefit plans. Therefore,
> HSBC is not a fiduciary under ERISA simply because the exercise of its superior
> rights over Silverline's assets may have made it more difficult for Silverline to make
> timely payments into the Plan. *See, e.g., Useden v. Acker*, 947 F.2d 1563, 1575 (11th
> Cir. 1991) (bank's exercise of rights to liquidate collateral, which directly
> compromised plan assets, nonetheless did not render it a fiduciary under ERISA).

2009 WL 362003, at * 4.

Although certain of Chemical Bank's decisions after default to either advance or not advance MIS funds for certain payments may have directly affected MIS's ability to pay fringe benefits, this is not sufficient standing alone to render Chemical Bank a fiduciary under ERISA.  Chemical Bank had every right, as a secured lender, to take appropriate steps to maximize its ability to recover on the $1 million that MIS owed.  Chemical Bank was under no obligation to act contrary to its own interests to protect the Plaintiffs.  *See Vengurlekar, supra*;  *Useden v. Acker*, 947 F.2d 1563, 1575 (11th Cir. 1991) (bank's decision to liquidate collateral directly compromising plan assets did not render it a fiduciary under ERISA).  There is no evidence that Chemical Bank ever directed MIS not to pay fringe benefits or that MIS ever had ultimate check writing authority at MIS.  Indeed there is explicit testimony to the contrary on both points, as discussed *supra*.  Chemical Bank was not an ERISA fiduciary with respect to the Plan assets and did not compromise or waive its status as a priority secured lender.

### C.   Plaintiffs Are Entitled to Recover Attorneys Fees, Expenses or Other Costs Incurred in Defending Against Chemical Bank's Priority Claim

ERISA, 29 U.S.C. § 1132(g)(2)(D), provides in pertinent part:

(2) In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan-

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant....
The Court concludes that Chemical Bank has priority in the escrowed funds.

The CBA contains the following provision regarding recovery of attorney's fees and costs:

An employer who fails or refuses to make required contributions by the 26th month as per Section B of this Article, agrees to pay liquidated damages for late payment and the cost of collection resulting from the late payment of contributions.  The liquidated damages will be based on the length of time such contributions are due,

25

the amount of delinquent contributions, the date payment is actually made, and the administrative, accounting and legal expense required to collect the delinquent fringe benefits.

ECF No. 80-4, CBA, Art. XV, Sec. N. Plaintiffs received a judgment in their favor in this matter and are therefore entitled to attorney's fees and costs of the action, to be paid by MIS, under § 1132(g)(2). The issue raised by MIS is whether the fees and costs incurred in litigating the issue of priority between Plaintiffs and Chemical Bank are recoverable from MIS, either under ERISA or under the terms of the CBA.

Courts have held that attorney's fees incurred in collecting an ERISA judgment, particularly when sought in the same proceeding in which the judgment has been rendered, fit within the statutory framework. *See Sheet Metal Workers Health and Welfare Fund v. Big D Service Co.*, 876 F.2d 852, 854 (10th Cir. 1989) (finding that trusts were entitled to a reasonable attorney fee incurred in post-judgment collection efforts that were part of the original ERISA proceeding); *Free v. Briody*, 793 F.2d 807, 808-09 (7th Cir. 1986) (upholding an award under § 1132(g) of fees incurred in efforts to collect on a judgment for unpaid contributions, noting that "[n]othing on the face of the statute, or in its history or purpose, suggests that the only legal efforts that can be compensated by an award of fees are those that precede the judgment, and not those incurred afterward to make the judgment a reality."). Likewise, the CBA in this case is broadly drafted to cover "legal expense required to collect the delinquent fringe benefits."

The Court finds no reasonable basis for denying outright Plaintiffs' request that they be awarded the attorneys' fees and costs incurred in litigating this priority dispute, which is directly connected to its efforts to collect on the judgment rendered by this Court in the Plaintiffs' favor. The Court also finds that Plaintiffs' counsel's hourly rate of $175/hour is reasonable, as is the number

of hours he alleges he spent from the time period April 1, 2011 through June 24, 2011.  (ECF No. 80-3, Affidavit of Matthew Henzi ¶ 5.)  Accordingly, the Court will grant the request for these attorneys' fees in the amount of $3,962.50.  *Id*. ¶ 6.  This amount may be included in the revised Motion to Amend Judgment that the Court has ordered Plaintiffs to submit.

## III.    CONCLUSION

For the reasons stated above, the Court DENIES IN PART Plaintiffs' Motion to Amend Judgment to Include Audit Amounts (ECF No. 80), to the extent that Plaintiffs seek to recover any amounts related to alleged unpaid contributions for any time prior to October 18, 2009.  Plaintiffs shall submit to the Court a revised Motion to Amend reflecting this ruling and shall not include any request for additional amounts that may be incurred in complying this Court's ruling.  Plaintiffs shall bear all costs associated with preparing and submitting their revised motion to amend the judgment to the Court.  The revised Motion to Amend may include the amounts requested for attorneys' fees incurred in connection with the priority dispute in the amount of $3,962.50.

Further, the Court GRANTS Chemical Bank priority in the Escrowed Funds.  Chemical Bank shall ascertain the exact amount of the Funds currently held in Escrow pursuant to this Court's November 21, 2011 Order Directing Garnishees to Remit Funds to Escrow (ECF No. 79) and shall prepare an Order, and submit it for the Court's approval, awarding Chemical Bank the entire amount of the Escrowed Funds.

IT IS SO ORDERED.


                                        S/Paul D. Borman                              
                                        PAUL D. BORMAN
                                        UNITED STATES DISTRICT JUDGE

Dated:  September 25, 2012

27

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on September 25, 2012.

S/Denise Goodine
Case Manager